# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Raymond Coleman,

        Plaintiff,

v.

Ditech Financial, f/k/a Green
Tree Servicing LLC,

        Defendant.

_____/

Case No. 16-cv-11124

Judith E. Levy
United States District Judge

Mag. Judge Stephanie Dawkins Davis

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [3]

On March 8, 2016, plaintiff Raymond Coleman initiated this lawsuit in the Circuit Court for Oakland County, Michigan challenging the foreclosure sale of his property in November of 2015 by defendant Ditech Financial, LLC, formerly known as Green Tree Servicing, LLC, the lender on the mortgage. (Dkt. 1 at 8-17.) On March 29, 2016, defendant removed the matter to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (*Id.* at 1-2.) Before the Court is defendant's unopposed motion to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 3.) For the reasons provided below,

defendant's motion is granted and this matter is dismissed with prejudice.

I. **Background**

According to the facts alleged in the complaint, plaintiff resides at 8601 Pepper Road, Holly, Michigan, which is a property to which he held title and for which he possessed, at the time this lawsuit was filed, the right to redeem as the result of a foreclosure sale. (Dkt. 1 at 9-10.) He admits that by January 1, 2015, he was in arrears on his mortgage payments for the Holly property, and that in early January 2015, defendant offered him a trial loan modification. (*Id.* at 10.) Plaintiff complied with the payment terms of the trial modification, and on April 4, 2015, he received notification that defendant had approved him for a permanent modification of his mortgage loan. (*Id.* at 10, 24.) Plaintiff acknowledges that he was required to sign and return the Loan Modification Agreement he received, and he alleges that he did so; however, the version of this document attached to his complaint is not executed by either party. (*Id.* at 11, 26-30.) Plaintiff states that "during the period of this modification" monthly payments were made through electronic transfers from plaintiff's checking account, but that

on September 25, 2015, defendant returned the last two of these payments. (*Id.* at 11.) Attached to the complaint is a notice dated September 25, 2015, from the attorney for defendant indicating that a mortgage sale on the Holly property would take place on October 25, 2015. (*Id.* at 32.) Plaintiff alleges that he "immediately contacted Defendant" upon receipt of this notice on his door, and communicated with defendant "several times during the period between September 29, 2015 and November 10, 2015." (*Id.* at 11.) Plaintiff learned through these communications that defendant "did not have his modification paperwork but that the foreclosure sale was 'put on hold' and would not be held so Plaintiff could send it to Defendant again." (*Id.*)

Plaintiff alleges that he complied with defendant's every request, and that on November 16, 2015, defendant advised him that it "at last had everything it needed." (*Id.* at 11-12.) He alleges that the mortgage foreclosure sale took place on November 12, 2015 (*id.* at 12); however, the sheriff's deed attached by defendant to the removal filing indicates that the sale took place on November 10, 2015. (Dkt. 1-1 at 2.) Finally, plaintiff alleges that defendant mistook issues of missing paperwork regarding another property owned by plaintiff in Highland Park for the

3

Holly property—presumably resulting in the alleged improper foreclosure. (Dkt. 1 at 12.) However, the correspondence addressed to Coleman and attached to the complaint is dated November 13, 2015, which is after the foreclosure sale on the Holly property, and references missing documentation on a property at 2730 Wardlow in Highland Township, Michigan. (*Id.* at 34.) This letter is addressed to plaintiff and sent to plaintiff at an address for a property he claims to own also through financing from defendant, but it does not mention the Holly, Michigan property or the loan modification agreement on the Holly property. (*Id.*) It refers to plaintiff's loss-mitigation-assistance application on the Highland Township property and the need for missing documents to be submitted by December 13, 2015. (*Id.*)

Plaintiff asserts the following claims arising from these allegations:

> 1. breach of contract from defendant's refusal to accept plaintiff's mortgage payments and refusal to recognize plaintiff's compliance with the with the terms of the Loan Modification Agreement (Dkt. 1 at 12-13);

4

2. slander of title and encumbering of title through the publication of a foreclosure notice and the subsequent foreclosure sale of plaintiff's Holly property (*Id.* at 13-14);

3. promissory estoppel for enticing plaintiff into a loan modification agreement that caused plaintiff to rely on the promises of that agreement to the detriment of losing title to his home;

4. equitable estoppel for defendant's acts and omissions that caused plaintiff to believe that he had entered into a loan modification that cancelled the potential foreclosure action;

5. unjust enrichment on account of defendant's having acquired title to the Holly property without proper consideration; and

6. intentional or negligent infliction of emotional distress arising from the adverse actions taken against plaintiff.

## II. Defendant's Motion

On April 8, 2016, defendant filed the present motion to dismiss plaintiff's lawsuit pursuant to Rule 12(b)(6) for failing to allege any claims on which relief can be granted. (Dkt. 3.) Defendant attaches to its motions documentation of the agreements, notifications, and

transactions between the parties, including the original mortgage (Dkt. 3-1), the assignment of the mortgage to defendant in 2012 (Dkt. 3-2), a June 2, 2015 letter to plaintiff (Dkt. 3-3), a September 25, 2015 notice sent to "Mason Factor Inc" at the Holly, Michigan address (Dkt. 3-4), the sheriff's deed from the mortgage sale of the Holly, Michigan property (Dkt. 3-5), letters dated October 23, 2015 and October 30, 2015 to plaintiff (Dkt. 3-6), and an October 28, 2015 letter to plaintiff. (Dkt. 3-7.)

Defendant's recounting of the facts in this matter differs from plaintiff's allegations in several key ways. First, defendant asserts that plaintiff never signed and returned the Loan Modification Agreement sent to him on April 4, 2015, and on June 2, 2015, defendant sent plaintiff a letter notifying him that his request for a loan modification had been denied because he failed to execute and return the document in the time required. (Dkt. 3 at 8-9; Dkt. 3-3.) Defendant confirms plaintiff's allegations that on September 25, 2016, it returned payments he made, but additionally attaches the notice sent along with the returned payments with two explanations: "[f]unds must be certified," and "[t]he payments are not sufficient to bring the account current."

6

(*Id.* at 9; Dkt. 3-4.) Defendant asserts that the foreclosure proceedings were commenced in accordance with state law, with the notice of foreclosure posted on the property on September 29, 2015, and published in the legal news for four consecutive weeks beginning September 25, 2015. (*Id.*) Defendant acknowledges that it adjourned the foreclosure sale date to allow plaintiff an opportunity to provide the missing documents, and informed plaintiff in a letter dated October 28, 2015, that the foreclosure sale had been rescheduled for November 10, 2015. (*Id.* at 9; Dkt. 3-6; Dkt. 3-7.) The sheriff's deed indicates that the mortgage sale took place on November 10, 2015, and was recorded on November 17, 2015. (*Id.*; Dkt. 3-5.) Defendant also claims that the redemption period on the mortgage sale lasted six months and expired on May 10, 2016, while this motion was pending. (*Id.*; Dkt. 3-5.)

Defendant argues that dismissal is warranted because its foreclosure action was lawful and plaintiff has failed to allege "fraud or irregularity in the foreclosure procedure, resulting prejudice, and a causal link between the procedural irregularity and prejudice," as required under Michigan law to set aside a completed foreclosure. (*Id.* at 11-13 (citing, *inter alia*, *Conlin v. Mortg. Elec. Registration Sys., Inc.*,

7

714 F.3d 355, 359 (6th Cir. 2013); M.C.L. § 660.2304).) Moreover, defendant asserts that the loan modification process is not governed by Michigan's foreclosure-by-advertisement law, M.C.L. § 600.3204; meaning that plaintiff's allegations regarding defendant's improper conduct on the loan modification "cannot amount to an actionable fraud or irregularity in the foreclosure procedure." (*Id.* at 14 (citing, *inter alia, Campbell v. Nationstar Mortg.*, 611 F. App's 288, 294 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 272 (2015)).)

Defendant's motion further asserts that the claims of contract breach, promissory estoppel, equitable estoppel, and implied contract are barred by the Michigan Statute of Frauds, M.C.L. § 566.132, which precludes the enforcement of any promises or commitments by financial institutions unless they are signed by an authorized representative of the financial institution. (*Id.* at 14-16.) As for unjust enrichment, defendant argues that such claims do not apply to issues governed by an express contract, and here there is a valid mortgage giving defendant the right to initiate foreclosure. (*Id.* at 16.) Defendant argues that the slander-of-title claim is also insufficiently pleaded because there is no allegation that defendant acted knowingly and

8

maliciously, as the caselaw requires. (*Id.* at 17-18 (citing, *inter alia*, *GKC Mich Theaters, Inc. v. Grand Mall*, 222 Mich. App. 294, 301 (1997)).) Finally, defendant argues that the claim for intentional or negligent infliction of emotional distress are unavailing because damages for emotional distress are not available on breach-of-contract claims, and the complaint does not allege actions that would qualify as "extreme" or "outrageous." (*Id.* at 18-19.)

### III. Legal Standards

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). On a Rule 12(b)(6) motion, courts may "consider the Complaint and any

9

exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## IV. Analysis

Plaintiff seeks an order voiding the foreclosure sale and reinstating his loan with defendant under the terms of the loan modification agreement. (Dkt. 1 at 13-17.) The mortgage agreement, which is properly attached to defendant's motion, *see Bassett*, 528 F.3d at 430, specifies that acceleration or foreclosure is a remedy available to defendant provided that plaintiff receives notice at least thirty days prior to defendant's invocation of its power to sell the property. ("22. Acceleration." Dkt. 3-1 at 11.)

The foreclosure-by-advertisement statute, M.C.L. § 600.3204, specifies that a default in a condition of the mortgage can trigger the lender's power to sell. M.C.L. § 600.3204(1)(a). *See also Conlin*, 714 F.3d at 359 (citing cases). The statute controls both parties' rights once

10

the sale in completed, which is the status of the sale in this matter. *Conlin*, 714 F.3d at 359. As the *Conlin* Court explained, "Michigan's foreclosure-by-advertisement scheme was meant to . . . impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties." *Id.* (citing *Mills v. Jirasek*, 267 Mich. 609 (1934)). The statute serves the policy goal of having "drastically circumscribed" a court's power to set aside a sheriff's sale. *Id.* (citing, *inter alia*, *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 49 (1993)). Plaintiff faces the "high standard" of "a clear showing of fraud, or irregularity" in order to win a court order to set aside a sheriff's sale. *Id.* at 359-60 (quoting *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 429-30 (6th Cir. 2013); *Schulthies v. Barron*, 16 Mich. App. 246, 248 (1969)). The caselaw also specifies that only fraud "relate[d] to the foreclosure procedure itself" is sufficient for relief. *Id.* (citing, *inter alia*, *Freeman v. Wozniak*, 241 Mich. App. 633, 637-38 (2000)).

Plaintiff acknowledges that he had fallen into arrears on his mortgage in January of 2015, and he provides documentation that he received notice of the impending foreclosure sale on September 25,

11

2015, including that the sale would take place on October 27, 2015. This time period satisfies the thirty-day requirement of the mortgage agreement. Plaintiff acknowledges that defendant put the sale on hold so that he could submit the missing paperwork, and alleges that "on November 16, 2015 Plaintiff was advised by Defendant's representative that Defendant at last had everything it needed." (Dkt. 1 at 11-12.) But the foreclosure sale had taken place on November 10, 2015. (Dkt. 3-5.)

Plaintiff makes no allegation that defendant engaged in any fraud related to the foreclosure sale, and the facts provided by plaintiff are consistent with the notice and foreclosure process required by the mortgage agreement. Moreover, the facts alleged are not inconsistent with the requirements of M.C.L. § 600.3204. In other words, the complaint alleges that plaintiff defaulted on a condition of the mortgage and that defendant initiated foreclosure proceedings in compliance with the terms of the mortgage and state law; therefore, it does not allege fraud or misconduct pertaining to the foreclosure sale. Therefore, an order to void the foreclosure sale cannot be issued.

Plaintiff's claims related to the "contract" and promises between the parties through the loan modification agreement are also unavailing. Under Michigan's Statute of Frauds, M.C.L. § 566.132(2)(3), a promise by financial institutions—including a loan modification—is "void unless it is (1) in writing and (2) signed with an authorized signature by the party to be charged with the promise." *May v. Citimortgage, Inc.*, -- F. App'x --, 2016 WL 2801167, at *3 (May 12, 2016) (citing *Trombley v. Seterus, Inc.*, 614 F. App'x 829, 832 (6th Cir. 2015); M.C.L. § 566.132(2)(c)). When a loan modification agreement is not signed by the lender or the borrower, contract-based doctrines are inapplicable. *Id.* (citing *Thabata v. Bank of America, N.A.*, 620 F. App'x 467, 470 (6th Cir. 2015).

Even accepting as true plaintiff's assertion that he signed and returned the Loan Modification Agreement, plaintiff does not allege that defendant signed that agreement;[1] therefore Michigan's Statute of

---

[1] According to the terms of the mortgage on plaintiff's Holly, Michigan property, "[a]ny notice in connection with this Security instrument shall not be deemed to have been given to Lender until actually received by Lender." ("15. Notices." Dkt. 3-1 at 9.) Plaintiff alleges that he signed and returned the Loan Modification Agreement sent to him on April 4, 2015, even though the version he attached to his complaint is not signed. He does not allege that defendant received the signed document. Nor does he allege, even on information and belief, that defendant signed the document.

13

Frauds dictates that the Loan Modification Agreement does not govern any promises between these two parties. It follows that plaintiff's breach-of-contract claim based on the Loan Modification Agreement is unavailing, as are his claims based on promissory estoppel, equitable estoppel, and implied contract. *See Blackward Properties, LLC v. Bank of America*, 476 F. App'x 639, at *3 (6th Cir. 2012) (citing *Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550 (2000) (holding that M.C.L. § 566.132(2) is meant "to preclude *all* actions" against financial institutions)).

Plaintiff's claim of unjust enrichment is also unavailing. Unjust enrichment involves "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Collins v. Wickersham*, 862 F. Supp. 2d 649, 657 (E.D. Mich. 2012) (quoting *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (Mich. 2003)). A claim for unjust enrichment cannot succeed when there is an express contract governing the subject matter. *Id.* at 657-58. The alleged inequity would arise from defendant's having improperly acquired title to plaintiff's property; however, as discussed above, the complaint does not

14

allege any misconduct or impropriety in the foreclosure proceeding, which is the proceeding through which defendant acquired title. And the mortgage agreement, which is not alleged to be invalid, granted defendant the right to exercise the power of sale. For these two reasons, the unjust-enrichment claim is dismissed.

Plaintiff also fails to allege properly his claim for slander of title. To establish slander of title under Michigan law, the plaintiff must allege "that defendant 'maliciously published false matter disparaging [plaintiff's] title, causing [her] special damages.'" *Hurst v. Fed. Nat. Mortgage Ass'n*, -- F. App'x --, 2016 WL 700351, at *6 (6th Cir. Feb. 23, 2016) (quoting *Sullivan v. Thomas Org., P.C.*, 88 Mich. App. 77, 82 (1979)). Other than a conclusory statement that defendant's publication of the foreclosure notice was knowingly false, plaintiff fails to allege any facts to support his assertion that defendant's foreclosure notice was animated by malice or knowingly false. Rather, he alleges that he was in arrears, does not sufficiently allege that defendant had absolved that default by signing the Loan Modification Agreement, and describes foreclosure proceedings that complied with the terms of the mortgage and the governing law. Therefore, his pleadings are

15

insufficient to bring a slander-of-title claim and defendant's motion to dismiss this claim is to be granted.

Finally, plaintiff's claim for damages arising from either the intentional or negligent infliction of emotional distress is not valid. Intentional infliction of emotional distress requires four elements under Michigan law: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 464 (6th Cir. 2001) (citing *Andrews v. Prudential Secs., Inc.*, 160 F.3d 304, 309 (6th Cir.1998)). "Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Dotson v. Norfolk S. R.R. Co.*, 52 F. App'x 655, 660 (6th Cir. 2002) (quoting *Teadt v.* St. John's Evangelical Church, 237 Mich. App. 567, 582 (1999) (internal citation omitted)).[2] As for negligent infliction of emotional distress, Michigan does not apply this tort doctrine "beyond the situation where

---

[2] The Michigan case cited by the *Dotson* Court is listed as *Teadt v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 582 (1999), in the recorder.

a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Samberg v. Detroit Water & Sewer Co.*, No. 14-CV-13851, 2015 WL 2084682, at *3 (E.D. Mich. May 5, 2015) (quoting *Duran v. The Detroit News*, 200 Mich. App. 622, 629, (1993)).

Here, other than labeling defendant's conduct as "extreme" and "outrageous," there is no allegation regarding defendant's conduct that comes close to being so "outrageous" that it would satisfy the pleading standards for intentional infliction of emotional distress. And since this is a mortgage foreclosure and not a situation in which plaintiff alleges having witnessed an injury to a third party, negligent infliction of emotional distress is also not sufficiently pleaded. *See, e.g., Doering v. JPMorgan Chase Bank, N.A.*, No. 14-CV-12413, 2015 WL 5460702, at *5 (E.D. Mich. Sept. 16, 2015). Therefore, plaintiff's claim for damages due to emotional distress is dismissed.

## V. Conclusion

For the reasons provided above, defendant's unopposed motion to dismiss is GRANTED and plaintiff's complaint is DISMISSED with prejudice for failing to state claims on which relief can be granted.

IT IS SO ORDERED.

Dated: June 24, 2016                    s/Judith E. Levy
Ann Arbor, Michigan                     JUDITH E. LEVY
                                        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 24, 2016.

                    s/Felicia M. Moses
                    FELICIA M. MOSES
                       Case Manager